IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Marcia Elaine Boone, | ) | C/A No. 0:13-726-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of Social Security,[1] | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 DSC and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, Marcia Elaine Boone, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be reversed and the case remanded.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## ADMINISTRATIVE PROCEEDINGS

In March 2010, Boone applied for DIB and SSI, alleging disability beginning April 1, 2009. Boone's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on March 16, 2012, at which Boone, who was represented by Harry F. Smithson, Esquire, appeared and testified. At the beginning of the hearing, Boone amended her disability onset date to May 27, 2010. After hearing testimony from a vocational expert, the ALJ issued a decision on April 5, 2012 denying benefits and concluding that Boone was not disabled. (Tr. 21-32.)

Boone was born in 1967 and was forty-three years old at the time of her amended alleged disability onset date. (Tr. 136.) She has a high school education and past relevant work experience as a billing clerk and a cashier. (Tr. 174, 178.) Boone alleged disability since May 27, 2010 due to "fibromyalgia, arthritis, [right] knee, insulin, resistance, depression, insomnia, attention deficit [disorder]." (Tr. 42, 173.)

In applying the five-step sequential process, the ALJ found that Boone had not engaged in substantial gainful activity since her amended alleged onset date. The ALJ also determined that Boone's degenerative disc disease, mild arthritis in the right knee with right knee pain, major depressive disorder, anxiety, and attention deficit hyperactivity disorder were severe impairments. However, the ALJ found that Boone did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Boone retained the residual functional capacity



>to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that she can lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and walk for up to six hours in a workday; and sit for about six hours in a workday. She can push and pull without limitation within the weight limits described above. She can frequently balance and occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps, but never climb ladders, ropes and scaffolds. By reason of her mental impairments, she is further restricted to simple, routine tasks, involving no contact with the public and only occasional contact with co-workers.

(Tr. 25.) The ALJ found that although Boone was unable to perform any past relevant work, her impairments did not prevent her from doing any other kind of work. Therefore, the ALJ found that Boone had not been under a disability from May 27, 2010 through the date of her decision. (Tr. 23-32.) The Appeals Council denied Boone's request for review on February 25, 2013, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.



Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

Boone raises the following issues for this judicial review:

I. The ALJ erred in attempting to fulfill her shifted burden of proof on vocational issues by basing her decision on a clearly erroneous reading and citation of the "Conclusions" in Dr. Phillips' report; and by unequivocally endorsing the findings of the non-examining Dr. Waller, even though the vocational expert testified that Dr. Waller's underlying findings mean that the claimant is disabled.

II. The ALJ erred in failing to honor the Treating Physician Rule.

III. The ALJ erred in analyzing the admitted psychiatric impairment primarily by referring the claimant to unskilled work, without further discussion.

IV. The ALJ erred in evaluating credibility.

V. The ALJ erred in coming up with the RFC without any explanation.

(Pl.'s Br., ECF No. 12.)

## DISCUSSION

Although Boone raises several issues for this judicial review, the court finds for the reasons discussed below that remand is warranted on the second issue and therefore addresses this issue first. In this issue, Boone argues that the ALJ erred in failing to give opinions from her treating psychiatrist, Dr. William Bragdon, Jr., controlling weight, and alternatively, even if they were not entitled to controlling weight, the ALJ erred in failing to evaluate Dr. Bragdon's opinions in accordance with the relevant factors.

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).



However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that
>
> a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id., at *5.

The record reveals that Dr. Bragdon first treated Boone from December 2007 through November 2008 at the Lexington County Community Mental Health Center. The ALJ observed that during this time Dr. Bragdon diagnosed Boone with major depressive disorder and ruled out attention deficit hyperactivity disorder. However, in March 2009 the Center discharged Boone after she did not follow up with treatment or respond to follow up attempts.

Boone returned to the Center in May 2010 seeking treatment for her depression and attention deficit hyperactivity disorder. The ALJ stated that, at this visit, Boone reported "that her depression was getting worse and her ADHD was 'going crazy' because she had been off prescribed medications for three months (for financial reasons)." (Tr. 28.) Boone's examination indicated that she was alert and oriented, with no suicidal or homicidal ideation, hallucinations, or delusions; that her mood and affect were appropriate; and that she was diagnosed with major depressive disorder, recurrent, moderate, and ADHD and received a global assessment of functioning (GAF) score of 58. It appears that Dr. Bragdon resumed treating Boone in June 2010 at which time she reported increased depressive symptoms and Dr. Bragdon diagnosed post-traumatic stress disorder.

The ALJ observed that on August 20, 2010, Boone underwent a consultative psychological examination by Robert D. Phillips, Ph.D. Dr. Phillips indicated that Boone reported a head trauma episode in 1989, a history of depression and ADHD with prolonged treatment, and anxiety and panic attacks. The ALJ stated that Dr. Phillips's findings on examination included that she was oriented; showed some pain behavior but no psychomotor agitation; had intact logical thinking and some insight; had no evidence of hallucinations or paranoia; had fair memory with an attention span that was less than normal at times; and had no recent suicidal ideation. The ALJ found that a Folstein Mini-Mental State Exam was within the normal range and that Dr. Phillips commented that Boone showed moderate to severe depression with moderate anxiety and ADHD. The ALJ also observed



that Dr. Phillips's diagnostic impressions included major depressive disorder and ADHD, and he concluded that Boone was moderately limited in her ability to perform work activity.

Finally, the ALJ summarized Boone's other treatment notes with Dr. Bragdon which included (1) in August 2010, Boone reported increased episodes of rage or anger and restlessness and Dr. Bragdon increased and added to her medications; (2) in October 2010, Boone reported that her medication changes were helpful but that she was still depressed and Dr. Bragdon increased her Cymbalta; (3) in December 2010, Boone reported no specific complaints, indicating that the Cymbalta change was helpful; (4) in March 2011, Boone was without complaints and received medication to aid in smoking cessation; (5) in July 2011, Boone reported that the smoking aid was helping her reduce her smoking and that she was receiving an "A" in an online psychology course; and (6) in September 2011 and January 2012, Boone reported no specific mental complaints. (See Tr. 29.)

On September 2, 2010, Dr. Bragdon completed a Psychiatric Review Technique Form indicating that Boone met Listings 12.04 and 12.06. Specifically, Dr. Bragdon stated that Boone's impairments resulted in moderate restriction of activities of daily living and marked difficulties in maintaining social functioning and concentration, persistence, and pace. (Tr. 616-27.) By letter dated May 26, 2011, Dr. Bragdon stated the following under the heading entitled "Ability to Work":

> Ms. Boone has been in treatment for mental health issues for many years, addressing symptoms of depression, anxiety (PTSD), and attention deficit hyperactivity. She continues to report frequent periods of severe depression and anxiety. Ms. Boone has been unable to maintain work despite the fact she has some skills. She has attempted to work over the last several years, but has been unsuccessful in being able to do so adequately and consistently. She has exhibited inability to maintain focus, cope with normal work stressors, interact appropriately with others, and maintain focus/concentration to be able to perform work tasks through to completion. She has not worked the past 2 years due to increasing severity of her symptoms.

(Tr. 614.) On March 1, 2012, Dr. Bragdon affirmed his September 2010 psychiatric review technique assessment and his May 2011 letter. (Tr. 658.)

In evaluating Dr. Bragdon's opinions, the ALJ found as follows:

> A treating physician's medical opinion, on the issue of the nature and severity of an impairment, is entitled to special significance; and, when supported by objective medical evidence and consistent with other substantial evidence of record, entitled to controlling weight. Social Security Ruling 96-2p. In this case, the ongoing treatment notes of Dr. Bragdon do not support the severity of the limitations he suggested in the documents cited above, nor do the findings of other sources treating and examining the claimant, including those of the consultative examiner (Exhibit 12F). I do not find the opinions of Dr. Bragdon to be supported by objective clinical findings or persuasive in evaluating the claimant's disability.

(Tr. 30.)

Boone argues that the ALJ failed to acknowledge or consider that Dr. Bragdon's treatment notes from August 2010 through January 2012 include numerous notations of a GAF of 50.[3] (See Tr. 500, 502, 504, 630, 633, 636, 638, 648.) Additionally, she appears to argue that the ALJ failed to acknowledge findings by Dr. Phillips, the consultative examiner, that support Dr. Bragdon's opinions. For example, Dr. Phillips indicated that Boone reported that her pain prevented her from working and he found that Boone "appeared to be under a lot of stress[,] unable to manage her emotions," and "seemed to be emotionally reacting to her physical problems." (Tr. 475.) Boone

---

[3] Although this number appears to be illegible in some of the treatment notes, the parties appear to agree that the assessments by Dr. Bragdon consistently revealed a GAF score of 50. With regard to GAF scores, the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. Id. at 32-33. According to the DSM-IV, a GAF score between 41 and 50 may reflect "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. at 34. However, the court observes that the fifth edition of the DSM, published in 2013, has discontinued use of the GAF. American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013) ("DSM-V").



argues that the ALJ failed to acknowledge either Dr. Phillips's finding that "[l]ike most people, [Boone's] depression is not consistent and she has periods of feeling low followed by more extensive periods of depression" or Dr. Phillips's conclusion that "[t]he observed ability of the claimant appeared to be in line with what she reported. The claimant's work-related ability appears to be about what she stated during the evaluation. The stated impairment is likely to cause a level of impairment described by the claimant." (Tr. 476.) Further, Boone argues that even if Dr. Bragdon's opinions were not entitled to controlling weight, the ALJ's decision fails to reflect that his opinions were properly weighed pursuant to the above discussed factors.

Upon review of the parties' arguments, the ALJ's decision, and the administrative record, the court is constrained to remand this matter for further consideration by the Commissioner. Although the ALJ clearly considered Boone's records in this case, as pointed out by Boone, there are several pertinent aspects of the record which lend support to Dr. Bragdon's opinions that the ALJ failed to acknowledge or discuss. Therefore, the court is unable to determine whether the ALJ's decision is supported by substantial evidence. Moreover, although the ALJ appears to have not given Dr. Bragdon's opinions controlling weight, it is unclear what weight the ALJ gave Dr. Bragdon's opinions. As indicated above, when a treating physician's opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight she assigned the treating physician opinion. See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); see also SSR 96-2p, 1996 WL 374188, at *5 (requiring that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").



Here, the ALJ appears to have rejected Dr. Bragdon's opinion largely because it contained a conclusion regarding the ultimate issue of whether Boone met the Listings. Although opinions on such issues as whether an individual's impairments meet or are equivalent in severity to the requirements of any impairments in the listings are reserved to the Commissioner and are not entitled to controlling weight or special significance, opinions from any medical source on these issues "must never be ignored." SSR 96-5p, 1996 WL 374183, at *2-3. "If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record[;]" specifically, the adjudicator "must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d)." Id., at *3. In Boone's case, the ALJ appears to have not only disregarded Dr. Bragdon's opinion that Boone met a Listing but also ignored the *medical opinions* underpinning that conclusion, which generally should be given controlling weight if they are not unsupported or inconsistent with other substantial evidence. For example, Dr. Bragdon, a psychiatrist, opined that Boone "has exhibited inability to maintain focus, cope with normal work stressors, interact appropriately with others, and maintain focus/concentration to be able to perform work tasks through to completion." (Tr. 614.) Further, he found that she had moderate restrictions of activities of daily living and marked difficulties in maintaining social functioning and concentration, persistence, and pace. (Tr. 626.)

Moreover, the other reason the ALJ gave for discounting Dr. Bragdon's opinion does not appear to be supported by substantial evidence. The ALJ stated, without elaboration, that Dr. Bragdon's opinion was not supported by his treatment notes or objective clinical findings. However, Dr. Bragdon's treatment notes indicate, for example, that on June 29 2010, Boone returned for treatment "due to worsening symptoms of depressed mood [with] anxiety, irritability (increased



arguments [with] husband), sleep disturbances (sleeping an average of 2-3 hours per night [with] difficulty falling and staying asleep), poor appetite ([with] loss of 12 [lbs.] in past two weeks), flashbacks of prior trauma, and difficulty focusing on tasks." (Tr. 503.) On August 24, 2010, Dr. Bragdon noted that Boone complained of "motor restlessness and pent-up anger made worse by her limited physical abilities[, and] . . . increased episodes of rage, including one recent episode of grabbing her stepson but then walking away before escalating toward him." (Tr. 501.) On October 19, 2010, Dr. Bragdon noted that Boone was sad and felt worthless with "continued symptoms of depressed mood." (Tr. 499.) Additionally, although "[p]laintiff's GAF score is only a snapshot in time, and not indicative of [her] long term level of functioning," Parker v. Astrue, 664 F. Supp. 2d 544, 557 (D.S.C. 2009), here the record contains numerous GAF scores of 50 showing a pattern of serious symptoms.  Moreover, as Dr. Bragdon mentions in one of his opinions, the record reveals that Boone has a record of numerous failed work attempts.  (See Tr. 149-55 (revealing over forty employers from 1996-2000); Tr. 205 (listing ten distinct employers from 2002-2009); Tr. 351, 360 (Dr. Bragdon's treatment notes from 2008 discussing at least two separate employers that year); Tr. 357 (Boone's plan of care in 2008 with Dr. Bragdon including "[f]ull time employment for 12 mos." as one of Boone's "Discharge/Transition Criteria")).

      Finally, the ALJ does not appear to have fully applied the requisite factors in assessing Dr. Bragdon's opinion.  Dr. Bragdon is not only Boone's treating physician over a regular period of time, but is also the most specialized medical provider who has examined Boone.  See 20 C.F.R. §§ 404.1527(c), 416.927(c) (including whether the physician has examined the applicant, the treatment relationship between the physician and the applicant, and whether the physician is a specialist as factors for consideration in weighing a treating source's opinion).

In light of the court's order that this matter be remanded for further consideration, the court need not address Boone's remaining issues, as they may be rendered moot on remand. See <u>Boone v. Barnhart</u>, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Boone may present her remaining arguments on remand.

## ORDER

Based on the foregoing, it is hereby

**ORDERED** that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set forth above.

**IT IS SO ORDERED.**

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 19, 2014
Columbia, South Carolina